UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT CASWELL and LISA CASWELL, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>OLYMPIC PIPELINE COMPANY, et al.,<br><br>Defendants. | CASE NO. C10-5232BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' (collectively "TUCES")[1] motion for summary judgment (Dkt. 25). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

This is a toxic tort case. Plaintiffs (the "Caswells") originally filed this matter in Washington State Superior Court. *See* Dkt. 1 (notice of removal); *see also* Dkts. 23, 24 (letters of dismissal prior to removal). On April 2, 2010, after the non-diverse Defendants were dismissed, TUCES removed the action to this Court. *Id*.

---

[1] The captioned Defendant, Olympic Pipeline Company has been dismissed from this case. *See* Dkt. 24. To avoid confusion, the Court will refer to the Defendants collectively as TUCES, an acronym made of the first initial of each of the remaining Defendants.

ORDER - 1

On May 27, 2010, TUCES moved the court to dismiss this matter on summary judgment (Dkt. 25), and on June 14, 2010, the Caswells responded in opposition (Dkt. 33). On June 18, 2010, TUCES replied. Dkt. 36.

## II. FACTUAL BACKGROUND

Robert Caswell ("Mr. Caswell") alleges that, in March 2008, he was diagnosed with Acute Myelogenous Leukemia ("AML"). Dkt. 34, Ex. 1 (Complaint) ¶ 3.2. He subsequently filed this action against TUCES (and the previously dismissed Defendants) alleging that he developed AML "as a result of working around gasoline and other petroleum products at the GATX Portland Oregon Terminal ("GATX") from 1980-1984." Notice of Removal ¶ 4. During that time, Mr. Caswell worked as an operator at GATX where he was exposed to benzene-containing gasoline (a known human carcinogen) and other fuels. Complaint ¶¶ 3.1, 3.2. At the time of this exposure, Mr. Caswell lived and worked in Oregon. The entities that comprise TUCES are not citizens of the state of Washington or Oregon. However, they did conduct business in Oregon. *See, e.g.,* Complaint ¶ 3.1 (alleging Oregon to be the state in which Mr. Caswell suffered the toxic exposure to chemicals produced by TUCES). These facts are not disputed by TUCES. *See* Dkt. 25 at 8 (admitting that no genuine issues exist with respect to the underlying facts of Mr. Caswell's claims of injury-causing toxic exposure).

Mr. Caswell further alleges upon information and belief that TUCES "designed, refined, manufactured and produced" a "large portion of the products that [Mr.] Caswell was expos[t]ed to . . . within the State of Washington." *Id.* ¶ 3.6.

Based on these facts, the Caswells filed this action. Lisa Caswell ("Mrs. Caswell") was joined to this action and apparently seeks damages for loss of consortium. *See generally* Complaint. The central issue presented in the instant matter regards a dispositive choice of law inquiry as to whether Oregon or Washington law applies to this case.

ORDER - 2

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). See also Fed. R. Civ. P. 56(e).

Because the parties do not disagree over the underlying facts in this case (i.e., Mr. Caswell suffered injury from toxic exposure to chemicals produced by TUCES), the Court can resolve this matter on summary judgment.

### B. TUCES' Summary Judgment Motion

TUECS moves the Court to dismiss this matter on summary judgment because, it contends, the operative version of Oregon's statute of repose applies, rather than Washington's statute of repose. If true, the Caswells' claim is not actionable. In opposition, the Caswells urge the Court to apply Washington law and not Oregon law.

Therefore, the question to be answered herein is whether the Court must apply Washington law or Oregon law.

#### 1. Choice of Law

Oregon's statute, Or. Rev. Stat. § 30.905(1), extinguishes the right to bring claims for civil product liability after eight years. In contrast, Washington's statute, RCW

ORDER - 3

7.72.060(1)(a), provides repose after the product's safe useful life has expired, and a rebuttable presumption of twelve years is applicable. In other words, under the two statutes different results will occur depending on the length of time involved. It is evident that a conflict exists between the operative Washington statute of repose and the Oregon statute of repose. Therefore, a choice-of-law issue is presented.

In diversity actions, federal courts apply the choice-of-law principles of the forum state. *Bassidiji v. Goe*, 413 F.3d 928, 933 (9th Cir. 2005); *Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1263 (9th Cir. 1978). Therefore, the Court applies Washington's choice-of-law analysis to determine which of the two statutes of repose applies.

**2.     Most Significant Relationship**

Washington's choice-of-law analysis is based on the "most significant relationship" test. *Rice v. Dow Chemical Co.*, 124 Wn.2d 205, 213 (citing Restatement (Second) of Conflict of Laws § 145 (1971); *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580 (1976)). In *Spider Staging*, the Washington Supreme Court articulated the analytical framework for determining in which state the parties have the most significant relationship: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicle, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *Id.* at 580; *see also Rice*, 124 Wn.2d at 213-216 (evaluating these factors).

When these factors are in balance between the different forum state choices, a court will turn to policy to resolve the issue (i.e., which state has the greater interest in applying its laws to the matter). *Rice*, 124 Wn.2d at 213-216; *see also Zenaida-Garcia v. Recovery Systems Technology, Inc.*, 128 Wn. App. 256, 260-61 ("If the contacts are evenly balanced, the second step of the analysis" involves a policy inquiry). Balance is

ORDER - 4

not determined by merely counting contacts, but rather by considering "which contacts are most significant and to determine where these contacts are found." *Id.* at 260.

The Caswells argue that the significant relationship between the parties in this case exists in Washington. To support this proposition, the Caswells predicate their argument on the allegation that TUCES designed and manufactured their defective products in Washington. *See* Dkt. 33 at 15 (urging the Court to apply a heightened standard where contacts are created by the manufacture and design of products). The Caswells also point to the fact that they now live in Washington state. *Id*.

In opposition, TUCES contends that the Caswells overlook the factual distinctions between the cases they rely on and the instant matter. Dkt. 36 at 7-8 (referring to the Caswells' reliance on *Zenaida-Garcia*, *Spider Staging*, and *Martin*)[2]. Further, TUCES contends that *Rice* offers the most analogous set of facts to this case and that it should control the choice-of-law decision made herein.

*Spider Staging* involved a conflict of laws analysis regarding the wrongful death statutes of Kansas and Washington; a man in Kansas died after falling from a scaffold manufactured in Washington. The contacts analysis in *Spider Staging* has been summarized as follows:

> [T]he relevant Washington contacts included the fact that the scaffolding manufacturer was a Washington corporation having its principal place of business in Washington, that all the corporation's advertising originated in Washington, that the scaffold was shipped from Washington, and that Washington set the safety requirements for the scaffold. The relevant Kansas contacts were the fact that Kansas was the location of the injury and death, the plaintiffs were residents of Kansas, the plaintiff's place of business was Kansas, and the plaintiff ordered the scaffold from a Kansas distributor. The *Spider Staging* court found these contacts evenly balanced.

*Zenaida-Garcia*, 128 Wn. App. at 261 (citing *Spider Staging*, 87 Wn.2d at 581). In resolving the balanced contacts, the *Spider Staging* court moved to the second step in the

---

[2]*Martin v. Goodyear Tire & Rubber Co.*, 114 Wn. App. 823 (2003).

ORDER - 5

analysis and resolved the choice-of-law decision based on policy. *See Spider Staging*, 87 Wn.2d at 582-83.

*Zenaida-Garcia*, a case that the Caswells rely heavily on, involved an Oregon resident that "died in an industrial accident in Portland, allegedly because of a defective machine manufactured in Washington." 128 Wn. App. at 258. In *Zenaida-Garcia*, the relevant contacts were as follows:

> [T]he alleged manufacturer is a Washington corporation with its principal place of business in Washington, and the product was originally sold to a Washington company. The relevant Oregon contacts are that Oregon is the location of injury and death, the decedent was resident and employed in Oregon, and the machine has been operating in Oregon for eight and a half years.

*Id*. at 261. The *Zenaida* court rejected the Recovery System's theory that the place of injury, Oregon, was the sole controlling factor. *Id*. at 262.[3] Instead, the court concluded that the contacts were balanced and moved to the second step, a policy inquiry. The court held in favor of the decedent noting the significant factor of the manufacturer being incorporated in Washington where it manufactured the injury causing machinery. *Id.* at 263.

*Martin* involved a wheel assembly that fell from an Oregon-based truck in Washington. *See id*. at 262 (reviewing the facts and holding of *Martin*). In *Martin*, the court concluded that while the place of injury was qualitatively significant, it was not dispositive. *Id*. The *Martin* court engaged in a full *Spider Staging* analysis and determined that Goodyear (the manufacturer of the wheel assembly) had virtually no contacts in Washington and that "the wheel assembly entered the stream of commerce or was manufactured in either Oregon or Washington. The only Oregon contacts found were the

---

[3]In personal injury cases, such as this case, "the law of the place of the injury applies"; "this presumption is overcome if another state has a greater interest in determination of a particular issue." *Zenaida-Garcia,* 128 Wn. App. at 263 (citing *Martin*, 114 Wn. App. At 828 (quoting Restatement (Second) Conflicts of Laws § 146 (1971))).

ORDER - 6

residence of the decedent and the fact that Goodyear's product was ultimately purchased and used by an Oregon trucking company. *Id*. The *Martin* court did not find balance in the factors and concluded that the most significant contacts were in Washington, and therefore applied Washington law. *Id.*

Interestingly, *Zenaida-Garcia* suggests that *Rice* may be the most applicable to this case. *See Zenaida-Garcia*, 128 Wn. App. at 263. The *Zenaida-Garcia* court summarized *Rice* as follows:

> In Rice, the plaintiff developed leukemia after exposure to herbicides manufactured by Dow. His exposure occurred almost entirely in Oregon, where he worked for the United States Forest Service. The only significant Washington contact was that the plaintiff resided in Washington when he became ill. The court noted:
>> [E]ven if this court were to find that the tort occurred in Washington, which we do not, this would not compel an application of Washington law. The old rule that the law of the place of the wrong governs the action has been rejected for the "most significant relationship" rule.
>
> The significant relationships with Oregon included the facts that the relationship between the parties occurred there, the damaging product was placed in the stream of commerce and sent there, the injury occurred there, and at the time of his exposure, plaintiff lived there. The absence of significant Washington relationships was the deciding factor, not merely the place of injury.

Turning back to the matter at hand, the Court must evaluate the contacts presented in the Caswells' case. Similar to Mr. Rice, Mr. Caswell was injured in Oregon while working for an Oregon company that used harmful chemicals he alleges caused him to develop AML. Unlike the case in *Martin*, the products alleged to have caused Mr. Caswell's injuries did enter the stream of commerce in Oregon: his Oregonian employer purchased them and he was exposed to them while working and living in Oregon. Further still, and in contrast to *Zenaida-Garcia* and *Spider Staging*, the companies comprising TUCES are not incorporated in Washington, a factor found significant in resolving the contact issue and secondarily, the policy questions at issue in those cases.

These facts seem to leave open only one issue that could weigh in the Caswells' favor, and it is this one that they most heavily rely upon: that the design and

ORDER - 7

manufacturing of the harmful chemicals may have occurred in Washington.[4] *See* Dkt. 33. However, even if TUCES did design and manufacture the harmful product in Washington, *Rice* would not hold that such a fact on its own is dispositive. *See id*. at 216. Indeed, the *Rice* Court held that

> Oregon's interest is in providing repose for manufacturers *doing business in Oregon and whose products are used in Oregon* state . . . . Applying Oregon law achieves a uniform result for *injuries caused by products used in the state of Oregon* and predictability for manufacturers whose *products are used or consumed in Oregon.*

*Id.* (emphasis added). In other words, *Rice* assumes that the Oregon statute of repose may be applicable when the injury-causing product is designed and/or manufactured in Washington but used or consumed in Oregon; provided, however, that the substantial relationship exists in Oregon. *See id*.

Although *Rice* leaves open the possibility that such a factor could weigh in favor of the Caswells' position, the Court does not find that it outweighs the other facts presented here, which are nearly identical to those presented in and relied upon by the court in *Rice*. In *Rice*, the court applied Oregon's statute of repose after finding that the relationship is centered in Oregon, which was evidenced by the facts that the harmful product was placed into the stream of commerce and sent to Oregon and, at the time of the alleged injury, Rice lived in Oregon and became exposed to the chemicals while working for his Oregon employer that purchased the harmful product. *See Rice,* 124 Wn.2d at 214. The same facts are present in the Caswells' case. *See* Complaint ¶¶ 3.1, 3.2 (alleging facts consistent with those found in and relied upon in *Rice*). These facts do not suggest that a balance exists in the contact relationship between Washington and Oregon;

---

[4] The only other argument that the Caswells seem to offer is that they are residents of Washingon. *But see Rice*, 124 Wn.2d at 216 (rejecting Rice's theory that his residence in Washington created significant contacts when the injury occurred in Oregon). Therefore, the Court rejects any such argument because the Caswells' current residence is irrelevant, since Mr. Caswell's alleged injury occurred in Oregon.

ORDER - 8

rather, the Court finds them to weigh heavily in favor of finding that the most significant relationship exists in Oregon.

Therefore, the Oregon statute of repose applies.

### 3.     **Oregon's Statute of Repose**

Oregon's statute of repose, former Or. Rev. Stat. § 30.905(1), provides that a "product civil liability action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption." The products Mr. Caswell may have been exposed to must have been purchased no later than 1984, which is well over eight years ago. *See* Complaint ¶¶ 3.1, 3.2 (alleging an injury time frame between 1980-84). TUCES contends the former statute should apply by its terms to bar the Caswells' claims.

In opposition, the Caswells claim that "there is a false conflict between Oregon and Washington law because Oregon is not interested in applying its law, and Washington is." Dkt. 33 at 25. The Caswells argue that this position was confirmed when Oregon amended its "statute of repose (O.R.S. 30.905/Senate Bill 284)."[5] *Id*. at 26.

The Amended statue provides, in relevant part:

> (4) A product liability civil action for death must be commenced before the earlier of:
> (a) Three years after the death of the decedent;
> (b) Ten years after the date on which the product was first purchased for use or consumption; or
> (c) The expiration of any statute of repose for an equivalent civil action in the state in which the product was manufactured, or, if the product was manufactured in a foreign country, the expiration of any statute of repose for an equivalent civil action in the state into which the product was imported.

The Caswells argue that this amendment clarifies what the law in Oregon has always been and that, because some of the toxic chemicals at issue here may have been manufactured in Washington, the Washington statute of repose applies.

---

[5] The Oregon Senate amended Or. Rev. Stat. § 30.905 in 2009.

ORDER - 9

However, "[t]he amendments to ORS 30.905 by section 1 of this 2009 Act apply only to causes of action that arise on or after the effective date of this 2009 Act[,]" which is January 1, 2010. Laws 2009, c. 485 § 2. The latest it could conceivably be argued that Mr. Caswell's action arose would be when he was diagnosed with leukemia in 2008. Therefore, the statute, as amended, does not apply to the Caswells' case. *See id.*

Therefore, the Caswells' claim is barred by the applicable Oregon statute of repose. *See* former Or. Rev. Stat. § 30.905(1).

### 4. Mrs. Caswell's Loss of Consortium Claim

To the extent Mrs. Caswell is claiming a loss of consortium, the claim is derivative to the Caswells' primary claim regarding Mr. Caswell's injuries. Therefore, this claim is moot.

### 5. The Caswells' Common Law Claims

Alternatively, TUCES argues for summary judgment on the basis that the Caswells' common law claims are preempted by the Washington Product Liability Act (WPLA). Dkt. 25 at 16. If the Court had determined herein that Washington's law applied, it would have permitted the Caswells to amend their complaint to make it consistent with WPLA. However, it need not do so because the Caswells' claim is not actionable.

Therefore, the Court need not reach this alternative argument.

### 6. Conclusion

Because applying the Oregon statute of repose is dispositive, in that the Caswells' claims are not actionable, the Court grants TUCES' motion for summary judgment.

## IV. ORDER

Therefore, it is hereby **ORDERED** that TUCES' motion for summary judgment (Dkt. 25) is **GRANTED**.

DATED this 22nd day of July, 2010.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 11